UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| STEVEN REID, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-144 |
| | § | |
| ARANSAS COUNTY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

On this day came on to be considered Defendants' Aransas County, Texas and William "Bill" Mills' Motion for Summary Judgment.  (D.E. 12.)  For the reasons stated herein Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

## I.     Jurisdiction

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question), as this cause of action is brought under Title VII, 42 U.S.C. § 2000e and the Age Discrimination in Employment Act, 29 U.S.C. § 621.  The Court has supplemental jurisdiction, 28 U.S.C. § 1367, over Plaintiff's state law causes of action.

## II.    Factual Background

This is a discrimination and retaliation case brought by Plaintiff Steven Reid against his former employer, Aransas County, Texas and Sheriff William Bills, Aransas County Sheriff.  The Court lays out the most relevant details below.

### A.     Initial Hiring by Aransas County Sheriff's Office

Plaintiff is presently a fifty-one year old Caucasian male.  On September 28, 2004, Plaintiff was issued a permanent jailer's license by the Texas Commission on Law

Enforcement Officer Standards and Education ("TCLEOSE").   After obtaining this
TCLEOSE license, Plaintiff was hired as a corrections officer in the Aransas County
Sheriff's Office ("ACSO") on February 13, 2006.  (D.E. 30-3.)  Plaintiff was forty-six
years old at the time he was hired.  At the time of his hire, Plaintiff hoped to attend the
Peace Officer Academy, but states that he was told by Captain Tina Kutach that ACSO
would only sponsor him at the Academy if he completed six to nine months as a
corrections officer before applying.  (D.E. 1 at 4-5.)

### B.      Outstanding Warrant

In March 2006, during a routine computer check as part of his training, Plaintiff
discovered that he had an outstanding warrant related to a bounced check for $197.62 in
2002; Plaintiff states that he resolved the matter in July 2003 by funding the check.  (D.E.
30 at 4; D.E. 30-46 at 16-17.)  Plaintiff sought advice, and was told by Captain Kutach
and the county attorney to come in, be processed pursuant to the warrant, pay the check
plus interest, and accept deferred adjudication rather than fight the charge.  Plaintiff paid
over $800 and believed the matter was resolved.  (D.E. 1 at 5; D.E. 30-46 at 17.)  Plaintiff
accepted unadjudicated community supervision for six months, agreed to pay restitution
and court costs, and a fine.  The community supervision was terminated three months
early, in June 2006.  (D.E. 30-7.)  Plaintiff maintained his position at the Aransas County
Detention Center throughout this entire period.  (D.E. 30-7.)

### C.      Termination, Reinstatement, and Report of OSHA Violations

In July 2007, ACSO sponsored Plaintiff for the Peace Officer's Academy.
Plaintiff passed the required tests, but was told that his deferred adjudication on the
bounced check charge disqualified him from entry into the Academy for ten years and

possibly disqualified him from working as a corrections officer.   (D.E. 1 at 7.)
Thereafter, in a July 31, 2007 letter, Captain Kutach terminated Plaintiff allegedly due to
his community supervision and the problems that would pose with his TCLEOSE license.
(D.E. 30-10; D.E. 30-11.)  The letter explained:

> Mr. Foust from Del-Mar Regional Police Academy contacted [Sheriff
> Gilliam] in reference to your enrollment in the Academy.  He has brought
> to our attention that the Court Ordered Community Supervision that you
> were placed on for your warrant in 2006 has disqualified you from
> attending the academy.  This being brought up I took the position that
> TCLEOSE had to be called to ensure that you still be licensed as a jailer.
> After speaking with TCLEOSE I was informed that even though you were
> not actually convicted of this offence, the fact that you were Court
> Ordered Community Supervision your jailers' license is no longer valid
> for you to work for this department either.  This is not a decision that I like
> having to make, but due to the fact that it is now known that your license
> is not valid I must relieve you from your position as a jailer of the Aransas
> County Detention Center.  (D.E. 30-10.)[1]

Plaintiff then contacted TCLEOSE, which informed him that he could be terminated only
after an administrative hearing.   On August 20, 2007, ACSO reinstated Reid to his
position, and reinstated his full benefits on October 24, 2007.  (D.E. 30-12; D.E. 30-15;
D.E. 30-46 at 21.)

It was around this time when Plaintiff reported to state authorities certain alleged
Occupational Safety and Health Administration ("OSHA") violations (related to the
placement of pesticides in employee work areas) (D.E. 30-13) and reported the misuse of
medications by certain nurses at the county jail (regarding the dispensing of prescription
medications intended for federal inmates to state inmates).  (D.E. 1 at 7-8; D.E. 30-9.)
The Texas Board of Nursing investigated this latter matter, found a violation, and issued

---

[1] Sheriff Gilliam resigned on November 3, 2008, and was replaced by current sheriff William Mills.  (D.E. 3-25.)

a sanction of "Warning with Stipulations," along with an admonishment to abide by all provisions of applicable law.  (D.E. 30-32.)

### D.     Suspension of TCLEOSE License, Hand Injury, and Termination

Despite Plaintiff's reinstatement at ACSO, the matter of his warrant and community supervision was not resolved with TCLEOSE.   In March 2008, Plaintiff obtained the support of Chief Deputy McLester, in preparation for his upcoming administrative hearing with TCLEOSE. (See D.E. 30-16.)   McLester's letter explained:

> From the first instance I have acknowledge[d] to Officer Reid that I would personally vouch for and stand along side Officer Reid in his pursuit to clear his record.   Due to his personal actions to not only bring this situation forward but his willingness to stand tall and do the right thing coupled with TCLEOSE first giving their blessing to stay employed then to recommend termination and then advising to rehire, brings me to sincerely request the TCLEOSE governing board to consider his judgment complete and allow him to continue to pursue his goal of becoming a Certified Law Enforcement Officer.  (D.E. 30-16.)

Nevertheless, following a hearing, TCLEOSE issued a final order suspending Reid's jailer's license for three months effective June 27, 2008, thus making Reid eligible for reinstatement on September 27, 2008.  ACSO was informed of this decision on July 3, 2008.  (D.E. 30-19; D.E. 30-19.)    A few days prior to this notification (on June 24, 2008), Reid injured his right hand while on the job, dealing with a physically aggressive inmate.  (D.E. 30-17; D.E. 30-18.)  Aransas County filed the injury report on July 10, 2008.  (D.E. 30-20.)

Reid was subsequently placed on restricted duty on June 30, 2008.  Reid inquired into whether he could perform "master control position" duties, in light of his hand injury and his suspended TCLEOSE license.  Captain Kutach denied this request, and Aransas

County allegedly refused to put Reid back to work or accommodate his injury by assigning him other tasks.  (D.E. 30 at 6-7.)

Reid was terminated on July 14, 2008, and a hand written note on his Personnel Action Form stated that he was "eligible for rehire upon showing all proof of reinstatement" of his TCLEOSE license. (D.E. 30-22.)  Chief Deputy McLester informed Plaintiff that he had been fired because TCLEOSE changed its decision as to Plaintiff's license; specifically, they changed Plaintiff's three months license probation to a three month suspension.  Plaintiff later received a letter of separation dated July 17, 2008, postmarked July 21, 2008.  (D.E. 1 at 10-11.)  Thereafter, on July 17, 2008, ACSO reported to TCLEOSE that Reid was discharged because he failed to complete TCLEOSE licensing requirements.  (D.E. 30 at 8.)

### E.  Failure to Rehire

Reid's TCLEOSE license was eligible for reinstatement on September 28, 2008, although the license was not actually reinstated until March 20, 2009, when Reid paid the fees associated with reinstatement.  (D.E. 30-29.)  Reid was medically released for full duty on August 11, 2008, and he reached Maximum Medical Improvement on June 16, 2009, making him eligible to return to full working duties.  (D.E. 30-30.)  Reid claims that Aransas County was aware of his eligibility, both with respect to his license and his medical clearance.  Reid applied to return to work on several occasions in response to advertisement, including in March 2009 (after his license was reinstated), but Defendants never rehired him.  (D.E. 30 at 9.)

Reid filed an EEOC Charge on February 25, 2009, which was amended on March 18 and April 1, 2009.  (D.E. 30-27; D.E. 1 at 4.)  Reid makes claims of sex and age

discrimination, along with retaliation. He claims that he was terminated for making a worker's compensation claim, and provides other comparison officers who had theft charges or convictions, but were never reported to TCLEOSE. (D.E. 30-28.) The EEOC issued its right to sue letter on February 18, 2010. (D.E. 30-33.) This lawsuit followed.

###### F.    Causes of Action

Based upon these facts, Plaintiff alleges causes of action for (1) gender discrimination, in violation of the Equal Employment Opportunities Act, 42 U.S.C. § 2000e et seq, (2) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., (3) retaliation for gender and age discrimination claims, (4) hostile work environment, (5) violation of the Texas Labor Code § 451.001 et seq, based upon Defendants' alleged retaliation for pursuing a worker's compensation claim for his injured right hand, and (6) violation of the Texas Whistleblower's Act, Tex. Gov't Code Ann. § 554.001 et seq. in retaliation for Plaintiff reporting legal violations to law enforcement agencies. Finally, Plaintiff seeks declaratory judgment that Defendant must report to TCLEOSE all training in which Plaintiff participated. (D.E. 1 at 17-18.)[2]

## III.    Procedural Background

Plaintiff Steven Reid filed this action on May 19, 2010. (D.E. 1.) Defendants filed their Motion for Summary Judgment on February 15, 2011. (D.E. 12.) Plaintiff responded on March 16, 2011. (D.E. 30.)[3]

---

[2] Plaintiff alleges that ACSO failed to report to TCLEOSE his participation in training and education courses, which resulted in Plaintiff appearing not to be current on training requirements. Plaintiff reported this issue to TCLEOSE in a January 12, 2010 letter. Although he states he has expended significant time attempting to get the credits reported, to date they have not been submitted to TCLEOSE. (D.E. 1 at 12.)

[3] The response was originally filed on March 7, 2011, but struck several times due to procedural reasons. The properly filed response was entered onto the docket on March 16, 2011. (D.E. 30.)

IV.     **Discussion**

   A.     **Summary Judgment Standard**

   Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

   On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247. The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party. Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

**B.      Discrimination and Hostile Work Environment Claims**

      **a.      Gender and Age Discrimination**

           **1.      Applicable Law**

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . ." 42 U.S.C. § 2000e-2(a)(1). The ADEA forbids "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); see Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004).

"A claim of employment discrimination can be proven through direct or circumstantial evidence. Where . . . the plaintiff does not produce any direct evidence of discrimination, we apply the well-known McDonnell Douglas burden-shifting framework as modified and restated . . . ." Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411 (5th Cir. 2007); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). "Under the modified McDonnell Douglas approach, the plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the

defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic."  Id. at 411-12.

A prima facie case of discrimination under either Title VII or the ADEA requires a plaintiff to show "that she: (1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably."  Okoye v. Univ. of Texas Houston Health Science Center, 245 F.3d 507, 512-13 (5th Cir. 2001); see Jones v. Overnite Transp. Co., 212 Fed. App. 268, 273 (5th Cir. 2006) (citing Okoye). It is well established that "[t]he standard of proof for Title VII discrimination claims also applies to . . . ADEA claims."  Roberson, 373 F.3d at 651; Monteverde v. New Orleans Fire Dep't, 124 Fed. App. 900, 904 (5th Cir. 2005).

### 2.    Analysis

Defendants argue that Plaintiff cannot make out a prima facie discrimination or hostile work environment claim because he was not qualified for his position after his TCLEOSE license was suspended.  (D.E. 12 at 4.)  Plaintiff responds that he has met his prima facie burden.  (D.E. 30 at 18-19.)

As Defendants correctly note, Texas law requires corrections officers to hold a license issued by TCLEOSE.   "TCLEOSE sets the minimum standards for enrollment, examination, and licensure relevant to becoming a Texas peace officer."  State v. Collazo, 264 S.W.3d 121, 125 (Tex.App.-Houston [1st Dist.] 2007).  Texas Occupations

Code § 1701.301 provides: "[e]xcept as provided by Sections 1701.310 and 1701.311, a person may not appoint a person to serve as an officer, county jailer, or public security officer unless the person appointed holds an appropriate license issued by the commission." Tex. Occ. Code § 1701.301; see Bryant v. State, __ S.W.3d __, 2010 WL 3212126, at *4 n.3 (Tex. App. – Houston [1 Dist.] 2010) (discussing licensure requirements). The exceptions provided under Sections 1701.310 and 1701.311 are not relevant here. Texas law also requires that agencies report arrests of employees for most criminal offenses to TCLEOSE. See 37 Tex. Admin. Code § 211.28(a) ("When a . . . county jailer is arrested for a criminal offense above the grade of Class C misdemeanor . . . . the chief administrator of the arresting agency . . . must report such fact to the commission in writing within 30 business days of the arrest . . . ."); § 211.29(e). TCLEOSE found that Reid was convicted or placed on deferred adjudication for a criminal offense above a Class C misdemeanor. (D.E. 30-19 at 5.)

In light of the TCLEOSE licensing requirements, it is clear that Plaintiff was not "qualified for his position" during the period that his license was suspended or otherwise inactive, and thus cannot make out his prima facie case. See, e.g., Nwakanma v. Rodriguez, 122 Fed. App. 765, 767 (5th Cir. 2004) ("Nwakanma failed to offer any evidence that he was qualified for the position. Nwakanma offered only a TCLEOSE-issued firearms certificate; the position required all applicants to have valid TCLEOSE peace officer licenses. Because Nwakanma failed to offer competent summary judgment evidence that he met the second requirement [qualification], the district court properly awarded Appellees summary judgment as to the discrimination claim based on the Internal Affairs position."). Plaintiff was without a TCLEOSE License from June 27,

2010 to March 20, 2009.[4]  However, once Plaintiff's license was reinstated on March 20,

2009, he again became qualified for his position.  While Plaintiff makes much of the fact

that Defendants did not report others with criminal violations to TCLEOSE, the fact

remains that Plaintiff's TCLEOSE license was actually suspended, and under Texas law

he was not qualified for his position during that suspension.  Plaintiff's lack of a license

precludes him from making a discrimination claim during the pendency of that

suspension.  In making this decision, the Court recognizes that Plaintiff has provided

significant evidence of others within ACSO who have significant criminal records, but

nonetheless were not reported to TCLEOSE or allowed to keep their license.  While this

claim is troublesome, it does not change the fundamental fact that Plaintiff cannot make

out a prima facie case of either age or gender discrimination because he was not qualified

for his position as a corrections officer with ACSO, in light of the suspension of his

TCLEOSE license.

        This is not to say that Plaintiff's discrimination claims are foreclosed entirely.

Rather, Plaintiff may make claims of gender and age discrimination with respect to any

adverse actions that occurred after March 20, 2009, particularly Defendants' refusal to

rehire Plaintiff, in light of statements made at the time of his discharge that he would be

eligible for rehire upon reinstatement of his license.  The Fifth Circuit has found a refusal

to rehire to constitute an "adverse employment action" in certain circumstances, and has

explained, "[t]o establish a prima facie case of discrimination where the alleged adverse

employment action is failure to rehire, the plaintiff must have actually sought the position

---

[4] Plaintiff argues that, even with his suspended license, he was qualified for certain "master control positions."  (D.E. 30-48.)  Plaintiff does not, however, provide any support for the assertion that no TCLEOSE license is required for this position, or that such positions were available at the time.  In any event, the relevant inquiry is whether Plaintiff was qualified for the position he had or seeks, not whether he is qualified for other positions (with different requirements) elsewhere in the ACSO.

she alleged to have been denied." <u>McCullough v. Houston County Tex.</u>, 297 Fed. App. 282, 287 (5th Cir. 2008) (citing <u>LaPierre v. Benson Nissan, Inc.</u>, 86 F.3d 444, 448 (5th Cir. 1996); <u>see also</u> <u>Payne v. McLemore's Wholesale & Retail Stores</u>, 654 F.2d 1130, 1141 (5th Cir. 1981) ("Defendant's failure to rehire the plaintiff was undoubtedly an adverse employment action."); <u>Giles v. Gen. Elec. Co.</u>, 1999 WL 202573, at *6 (N.D. Tex. Apr. 6, 1999) ("GE's refusal to rehire Giles is a sufficiently adverse employment decision.") (ADA claim).  Plaintiff has clearly stated that he sought to be rehired on numerous occasions, and has also provided proof that ACSO is actively hiring.  (D.E. 30-36; D.E. 30 at 23.)

The Court briefly considers Defendants' other arguments.  Defendant contends that Plaintiff cannot establish the existence of a "similarly situated" individual, i.e., other corrections officers who were allowed to continue their employment without obtaining and maintaining a jailer's license by TCLEOSE.  (D.E. 12 at 5.)  Plaintiff, in an attempt to satisfy the "similarly situated" requirement, has presented evidence of other employees who are alleged to have criminal records, but were allegedly not reported to TCLEOSE. However, as the Court has concluded above that Plaintiff may not maintain an age or gender discrimination case for any adverse employment action that occurred prior to the reinstatement of his license in March 2009, this argument is no longer relevant.  Plaintiff can seek relief only for adverse employment actions occurring after March 20, 2009, when he became qualified for his position, and thus a comparison to employees allowed to keep their positions without a TCLEOSE license is not necessary.  Plaintiff can attempt to demonstrate, for example, that he was not rehired after March 20, 2009, and rather individuals who were younger and/or female were hired instead.  <u>See, e.g.</u> <u>Okoye</u>,

245 F.3d at 512-13 (As part of a <u>prima facie</u> case, plaintiff must show that he "was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably.")

Finally, Defendant contends that Plaintiff's claims based upon conduct occurring before May 6, 2008 are barred because his EEOC Charge was not filed until March 3, 2009.  (D.E. 12 at 5-6.)   As explained above, Plaintiff can only maintain age and gender discrimination claims based upon Defendants' failure to rehire him after he regained his TCLEOSE license on March 20, 2009, and thus conduct occurring before May 6, 2008 may not be considered, regardless of whether claims with respect to that conduct is time barred.

In sum, the Court concludes that Plaintiff may maintain a discrimination cause of action under Title VII and the ADEA for adverse employment actions (i.e., failure to rehire) that occurred after the reinstatement of Plaintiff's TCLEOSE license on March 20, 2009, but not before.  As Defendant has presented no summary judgment evidence to demonstrate the absence of a genuine issue of material fact as to the alleged post-reinstatement discrimination, the Court allows such claims to proceed.

### b. Retaliation

The elements of a <u>prima facie</u> case of retaliation are as follows: "1) that [the plaintiff] engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action. If [the plaintiff] successfully establishes her prima facie case, the burden then shifts to the [the defendant] to state a legitimate non-retaliatory reason for its action. At this point, any presumption of retaliation drops from the case, and [the plaintiff] must show that [the

defendant's] stated reason is actually a pretext for retaliation."   Septimus v. Univ. of Houston, 399 F.3d 601, 610-11 (5th Cir. 2005).

Plaintiff contends that a disputed fact exists that "ACSO has and continues to discriminate against Plaintiff because Reid filed a charge of discrimination."   Thus, Aransas County "failed and refused to reinstate or rehire Reid because he filed a charge of discrimination on February 25, 2009," Plaintiff contends.  (D.E. 30 at 21.)  Defendants do not specifically urge summary judgment on Plaintiff's retaliation claims, other than with respect to the statute of limitations issues.   In that regard, they contend that retaliation claims for conduct occurring before May 6, 2008 are barred due to Plaintiff's untimely EEOC Charge.  (D.E. 12 at 5-6.)

The Court finds that there is a disputed issue of material fact with respect to Plaintiff's claim of retaliation based upon his discrimination charge, filed on February 25, 2009.  Plaintiff has demonstrated that he (1) filed a charge of discrimination (a protected activity), (2) an adverse employment action occurred (failure to rehire), and has demonstrate a genuine issue of material fact as to causation.  Defendant has not met its burden at this stage, and this remains a factual issue appropriate for resolution by a jury at trial.   Because Plaintiff's retaliation claim relates only to conduct occurring after February 25, 2009 (and indeed after reinstatement on March 20, 2009), Defendant's statute of limitations argument fails.

### c.      Hostile Work Environment

Plaintiff alleges that Defendants' conduct constitutes a hostile work environment, which was a "proximate or producing cause of Plaintiff's damages."  (D.E. 1 at 16.) Defendant moves for summary judgment on this claim for the same reasons as stated

above, namely that Plaintiff was not qualified to work as a corrections officer after suspension of his TCLEOSE license.  (D.E. 12 at 4.)

In order to establish a hostile working environment claim, a plaintiff must prove: "(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on [gender or age]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."  Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).  For harassment to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Moreover, "[i]n determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id.

Neither party devotes much attention to the hostile work environment claim. Plaintiff does not address this issue; indeed the phrase "hostile work environment" does not even appear in Plaintiff's summary judgment response.  Assuming Plaintiff continues to assert this "hostile work environment" claim, it fails for the same reason that his pre-license reinstatement claims of gender and age discrimination fail.  As an initial matter, it is unclear whether Plaintiff alleges a hostile work environment with respect to any

conduct other than his termination in July 2008. Plaintiff does not, for example, allege any discriminatory, derogatory, or threatening conduct based upon his age or gender. For the reasons stated above, Plaintiff cannot demonstrate that his termination in July 2008 was "based upon" his age or gender. Defendant argues that Plaintiff's termination was due to his suspended TCLEOSE license, and Plaintiff has provided no argument to rebut that statement. Plaintiff thus cannot make out a hostile work environment claim based upon his July 2008 termination. Moreover, the Court also finds no evidence to support the fourth element of the claim, namely that the harassment affected a "term, condition, or privilege of employment," which requires that the actions be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Ramsey, 286 F.3d at 268. Plaintiff fails to point to any conduct that fits this requirement.

In contrast to Plaintiff's discrimination and retaliation claims, however, Plaintiff cannot use events that happened after his termination to support his hostile work environment claim. In other words, Plaintiff cannot base a hostile work environment claim upon Defendants' failure to rehire him after reinstatement of his TCLEOSE license. See E.E.O.C. v. Noble (U.S.) Inc., 2006 WL 373487, at *3 (W.D. La. Feb. 16, 2006) ("[C]onduct is only actionable under a hostile work environment theory if it altered the terms or conditions of employment. Because [claimant] had been terminated by the time the [action] took place, there were no terms or conditions of employment to alter."); Andrews v. Atl. Marine, Inc., 2005 WL 2665345, at *3 (S.D. Ala. Oct. 18, 2005) ("[A]n event that took place over a year after [plaintiff's] employment was terminated could not

be considered part of [plaintiff's] hostile work environment claim.  [Plaintiff's] work environment with defendants ended upon his termination." ).

For these reasons, the Court grants summary judgment with respect to Plaintiff's hostile work environment claim.

### C.   Texas Whistle Blower Act

The Texas Whistle Blower Act provides, "[a] state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority."  Tex. Gov. Code § 554.002(a); see Lastor v. City of Hearne, 810 S.W.2d 742, 743 (Tex. App.- Waco 1991).  It further provides, "[i]n this section, a report is made to an appropriate law enforcement authority if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law."  Id. § 554.002(b).

The Act provides, "[e]xcept as provided by Section 554.006 a public employee who seeks relief under this chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter: (1) occurred; or (2) was discovered by the employee through reasonable diligence."  Tex. Gov. Code § 554.005.   Importantly, Section 554.006 states that "[a] public employee **must initiate** action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action **before suing under this chapter."** Tex. Gov. Code. § 554.006(a) (emphasis added).  Thus, "[t]he

Whistleblower Act **requires a claimant to timely initiate grievance or appeal procedures** of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing.  The statute provides the claimant with the discretion to exhaust any applicable grievance proceedings prior to filing suit or to terminate the proceedings and file suit after sixty days have elapsed." Med. Arts Hosp. v. Robison, 216 S.W.3d 38, 40 (Tex. App. – Eastland 2006) (emphasis added).  "[T]he legislature intended to make clear that a governmental entity's immunity from suit for a whistleblower claim is conditioned upon timely filing a grievance." Id. at 41.  As the Texas Supreme Court has explained, "Section 554.006 does not require that grievance or appeal procedures be exhausted before suit can be filed; rather, it requires that such procedures be timely initiated and that the grievance or appeal authority have 60 days in which to render a final decision."  Univ. of Tex. Med. Branch at Galveston v. Barrett, 159 S.W.3d 631, 632 (Tex. 2005).

Here, there is no evidence in the record that Reid initiated his administrative remedies under the Whistleblower Act.  In his deposition, Reid stated that he discussed his claims with an attorney, but took no further action.  He explains that "we have a CLEAT attorney who contacted McLester.  And I was rehired shortly after.  And so we let it got at that.  Or I let it go at that."  (D.E. 30-46 at 32.)   Reid was also asked, "[s]o you didn't make a whistleblower claim in 2007 to any agency, state or federal?," to which he responded, "I did not file – the whistleblower paperwork that needs to be done at that point.  We didn't go forward."  (D.E. 30-47 at 18.)   As Reid never initiated Whistleblower Act administrative remedies, his claim necessarily fails.[5]

---

[5] Even if Plaintiff did in fact follow the administrative procedures (either in 2007 or upon the reinstatement of his TCLEOSE License in March 2009), Defendant is correct that Plaintiff's Whistleblower claim is time

### D.    Texas Labor Code

The Texas Labor Code provides, "[a] person may not discharge or in any other manner discriminate against an employee because the employee has: (1) filed a worker's compensation claim in good faith."   Tex. Labor Code § 451.001.   The elements of a "section 451.001 retaliatory discharge cause of action are: (1) an employee; (2) is discharged or discriminated against in any manner; (3) because the employee has filed a workers' compensation claim in good faith; and (4) that 'but for' the employee's filing of a workers' compensation claim, the discharge would not have occurred when it did." Willis v. Nucor Corp., 282 S.W.3d 536, 543 (Tex. App. – Waco 2008).   "The last element is known as the 'causal connection' or 'causal link,' and the employee has the burden to establish a causal link between the discharge and the filing of the workers' compensation claim.   This link may be established by direct or circumstantial evidence. . . . The workers' compensation claim also need not be the sole cause of the termination." Id. at 543-44 (citations omitted).   Once a link between the filing of the workers compensation claim and the discharge is established, "it is the employer's burden to rebut the alleged retaliation by showing there was a legitimate reason for the discharge. Thereafter, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive.   The retaliatory motive may also be established by either direct or circumstantial evidence . . . ." Id. at 544 (citations omitted).

---

barred.   As noted above, "a public employee who seeks relief under this chapter must sue not later than the 90th day after the date on which the alleged violation of this chapter: (1) occurred; or (2) was discovered by the employee through reasonable diligence."  Tex. Gov. Code § 554.005.  In his deposition, Reid stated that he first initiated a Whistleblower claim after he was discharged in July 2007.  (D.E. 30-46 at 31.)   Plaintiff was thus aware of the possibility that he was being retaliated against in violation of the Whistleblower Act in August 2007, and regardless of whether he characterizes the "adverse personnel action" as his initial firing in July 2007, various retaliatory acts that took place after he returned to work, or even Defendants' failure to rehire him after his license was reinstated in March 2009, he did not file suit until May 2010, well beyond the ninety-day period set out in Section 554.005.  Plaintiff's EEOC charge, filed February 25, 2009, cannot toll the statutory period because it does not make a Whistleblower Act claim.

At least one Texas court, however, has explained that "[u]nder the Texas Workers' Compensation Act, we recognize that employees may file claims for discriminatory discharge. **We do not, however, read that statute to include an additional cause of action for failure to rehire.**" <u>Ybarra v. H.B. Zachry Co.</u>, 2002 WL 34231051, at *2 (Tex. App. – Corpus Christi June 27, 2002) (citing Tex. Lab. Code § 451.001) (emphasis added); <u>see also</u> <u>Smith v. Coffee's Shop for Boys & Men, Inc.</u>, 536 S.W.2d 83, 85 (Tex. App. 1976) ("[T]he acts statutorily condemned [under the Texas Labor Code] are those occurring during the employment, and not afterwards."). This Court agrees that while the statute broadly states that an employer "may not discharge or in any other manner discriminate," it is applicable only to "an employee," Tex. Labor Code § 451.001, not former employees or others seeking employment.

Here, Defendant argues that summary judgment is warranted because the "evidence establishes that Aransas County would have been in violation of Texas state law had it continued to employ Plaintiff as a corrections officer after TCLEOSE suspended Plaintiff's license," and the suspension of his license was the "sole reason" for the discharge. (D.E. 12 at 7.)  Plaintiff responds "[a] disputed material fact issue[] exists whereby a jury may reasonably determine that Aransas County **failed to reinstate or rehire** Plaintiff because Plaintiff instituted in good faith a proceeding to enforce his worker's compensation benefits and because Plaintiff hired a lawyer to represent him in his claim for worker's compensation benefits." (D.E. 30 at 21 (emphasis added).)

The Court finds that Plaintiff's Texas Labor Code retaliatory discharge claim fails as a matter of law. First, as noted above, Plaintiff cannot seek to recover for Defendant's failure to rehire him after his license was reinstated in March 2009, as Section 451.001

does not provide for a cause of action based upon such a failure to rehire.  Ybarra, 2002 WL 34231051, at *2.  Second, to the extent Plaintiff's retaliatory discharge claim is based upon his July 14, 2008 claim, this also cannot withstand summary judgment.  As an initial matter, it is not clear whether Reid even had initiated his worker's compensation claim by July 14, 2008.  During his deposition, Reid stated that he had not hired a lawyer to represent him in a worker's compensation claim prior to being terminated, nor had he testified in any worker's compensation proceeding prior to that time.  (D.E. 30-46 at 25.) The record contains little evidence as to the chronology of the claim.  Even if Reid did initiate his claim, summary judgment is appropriate because Plaintiff has not demonstrated a genuine issue of material fact as to the reason for his discharge in July 2008.  On summary judgment, the employer must first "establish[] a legitimate, non-discriminatory reason for the discharge," before the "employee [is] required to come forward with summary judgment evidence of a retaliatory motive."  Id. (citing Jenkins v. Guardian Industries Corp., 16 S.W.3d 431, 441 (Tex. App. – Waco 2000)).  Here, Defendant has demonstrated that Plaintiff's discharge was due solely to his suspended TCLEOSE license.  The Court has already concluded above that discharge was required after Plaintiff's TCLEOSE license was suspended.  Plaintiff has failed to put forth evidence of a retaliatory motive.  Indeed, on summary judgment, he argues that a disputed factual issue exists only as to Aransas County's "fail[ure] to reinstate or rehire Plaintiff,"  a claim for which the Court has already concluded Plaintiff cannot recover.  Any claim based upon Plaintiff's July 14, 2008 termination must be dismissed as well.

### E.    Declaratory Judgment

In his complaint, Plaintiff seeks a declaratory judgment that "Defendant has a duty to report to [TCLEOSE] all training that Plaintiff participated in and received during Plaintiff's employment with Defendant Aransas County," and requests that this Court "enter judgment declaring the training Plaintiff received during his tenure at Aransas County Sheriff's Office and that the Defendant Aransas County be ordered to submit the training to TCLEOSE.   Plaintiff further moves the Court to order Plaintiff recover Plaintiff's reasonable, necessary and customary attorney fees and court costs."  (D.E. 1 at 17-18.)

Defendant argues that Plaintiff's request for declaratory relief that Aransas County submit records regarding training that Plaintiff received during his tenure at the Aransas County Sheriff's Office to TCLEOSE is barred by sovereign immunity.  (D.E. 12 at 8.)  Defendant also argues that relief under the Texas Declaratory Judgment Act is improper because federal courts must apply their own procedural rules.

As an initial matter, Defendant is correct that the Texas Declaratory Judgment Act is inapplicable in this case, where subject matter jurisdiction is premised upon federal question jurisdiction, 28 U.S.C. § 1331.  Self-Insurance Institute of America, Inc. v. Korioth, 53 F.3d 694, 697 (5th Cir. 1995) ("[T]he Texas DJA is inapplicable. Jurisdiction in this case is under 28 U.S.C.A. § 1331 . . . , not diversity where state law applies.").  As one court has explained, "[t]he Court cannot award relief pursuant to the Texas Declaratory Judgment Act because declaratory judgment is procedural, not substantive, and federal courts apply their own procedural rules."   Rhodes v. Prince, 2006 WL 954023, at *4 (N.D. Tex. Apr. 11, 2006).  Plaintiff, however, also pleads under the

Declaratory Judgment Act, 28 U.S.C. § 2201. (D.E. 1 at 17.)  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Federal courts have "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995).

Defendant next contends that sovereign immunity bars any declaratory judgment. (D.E. 12 at 8.)   Aransas County cannot, however, claim sovereign immunity.  As one Texas court has explained, "[o]n more than one occasion, this Court has rejected the idea that the State is immune from declaratory judgment actions seeking to determine a party's rights under a statute.  It is, therefore, well established that when a private plaintiff merely seeks a declaration of his or her rights under a statute, such an action is not subject to a sovereign immunity defense, and a waiver or consent to suit is unnecessary." Sefzik v. Texas Dept. of Transp., 267 S.W.3d 127, 133-34 (Tex. App. - Corpus Christi, 2008) (internal citations omitted).  Courts have also held that Texas counties are "not considered an 'arm[s] of the state' under Eleventh Amendment jurisprudence and [are] similarly not immune to suit for declaratory and injunctive relief in [federal court]." CH2M Hill, Inc. v. Comal County, Tex., 2009 WL 3617528, at *4 (W.D. Tex. Oct. 27, 2009) (citing Hoff v. Nueces County, 153 S.W.3d 45, 47 (Tex. 2004) ("[B]ecause Nueces County is not an arm of the state under Eleventh Amendment jurisprudence, it does not possess Eleventh Amendment immunity . . . .").).

Despite Defendants' lack of sovereign immunity, the Court is unable to grant Plaintiff's requested declaratory relief, as he has not demonstrated that he has a right to bring such a claim.  It is well established that "[t]he federal Declaratory Judgment Act . . . does not create a substantive cause of action. A Declaratory Judgment Action is merely a vehicle that allows a party to obtain an 'early adjudication of an actual controversy' arising under other substantive law."  Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P., 2009 WL 3075205, at *19 (N.D. Tex. Sep. 25, 2009) (citing Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc., 723 F.2d 1173, 1179 (5th Cir. 1984); Collin County, Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN), 915 F.2d 167, 170 (5th Cir. 1990)).  The Supreme Court has also explained, "the Declaratory Judgments Act is not an independent source of federal jurisdiction; the availability of such relief **presupposes the existence of a judicially remediable right**."  Schilling v. Rogers, 363 U.S. 666, 677 (1960) (emphasis added).  Thus, a plaintiff cannot use the Declaratory Judgment Act to create a private right of action where none exists.  See Association of American Physicians & Surgeons, Inc. v. U.S. Dep't of Health & Human Servs., 224 F. Supp. 2d 1115, 1129 (S.D. Tex. 2002).   Plaintiff has argued that he has a right to have training credits reported to TCLEOSE, but has failed to demonstrate the "existence of a judicially remediable right" to such relief.  Schilling, 363 U.S. at 677.  In other words, Plaintiff has pointed to no statute entitling him to bring an action to require Defendant to report training credits to TCLEOSE.  Plaintiff cannot use the Declaratory Judgment Act to seek relief to which he is not otherwise entitled.[6]

---

[6] In addition, the Court notes that Mr. Reid (through former counsel John Curtis) attempted to resolve this issue directly with TCLEOSE.  After reporting the situation to TCLEOSE in a January 2010 letter, Timothy Braaten, TCLEOSE Executive Director stated that Mr. Reid could "[s]ubmit to either [himself] or to Nicole Hendrickson a certificate of completion for this training.  If we see a valid certificate, date, time, and hours

The Court also notes that Plaintiff, in his Summary Judgment Response, states that he is entitled to "recover the additional thirty percent of his worker's compensation income benefits for the period April 2, 2009, to June 16, 2009."  (D.E. 30 at 24.)  Plaintiff, however, has not sought this declaratory relief in his complaint.  (D.E. 1.)   The issue of Plaintiff's worker's compensation income appears only twice in the Complaint.  First, Plaintiff states in his "Facts" section that he was "denied the full benefits to which he was entitled to receive from the ACSO and Aransas County.  Plaintiff was denied medical treatment or disallowed or delayed from receiving needed medical treatment because of conduct, acts or omissions of the Defendants. . . . Chief Deputy McLester further informed Plaintiff that Aransas County was allowing Plaintiff to pursue the worker's compensation claim.  Defendants then took action to delay and hamper Plaintiff receiving his worker's compensation benefits and entitlements."  (D.E. 9-11.)  Second, in the "Damages" section of the Complaint, Plaintiff states that he seeks to "receive full worker's compensation benefits and entitlements."  (D.E. 1 at 19.)

In the "Declaratory Judgment Relief" section of the Complaint, however, Plaintiff seeks only a declaration that Defendant has a duty to report TCLEOSE training, nothing whatsoever about worker's compensation benefits.  (D.E. 1 at 7-8.)  Indeed, Defendants' summary judgment motion states its understanding that Plaintiff's declaratory judgment relief "ask[s] the Court to declare that Aransas County be ordered to submit training Plaintiff received during his tenure at Aransas County Sheriff's office to TCLEOSE."  (D.E. 12 at 8.)  This too is the Court's understanding of Plaintiff's declaratory relief request.  Plaintiff nowhere (until summary judgment) requests a declaratory judgment as

---

reflected on the face of the certificate, we will enter the training."  (D.E. 30-5.)  Thus, it appears that Reid could resolve this issue by submitting the appropriate documentation to TCLEOSE, bypassing Aransas County altogether.

to amounts owed under worker's compensation.  Plaintiff's brief mention of the issue at certain points in the Complaint is insufficient to state a claim for relief.  As Plaintiff cannot request additional declaratory judgment relief for the first time on summary judgment, Plaintiff's request for a declaration that he is "entitled to recover the additional thirty percent of his worker's compensation income benefits for the period April 2, 2009, to June 16, 2009," (D.E. 30 at 24) must be denied.

Plaintiff's declaratory relief request is dismissed.

## V.    Conclusion

For the reasons stated above, the Court hereby GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment.  (D.E. 12.)

Plaintiff may maintain the following claims against Defendants: (1) gender discrimination for failure to rehire after March 20, 2009, pursuant to Title VII; (2) age discrimination for failure to rehire after March 20, 2009, pursuant to ADEA; and (3) retaliation for filing age and gender discrimination complaint.

The Court DISMISSES Plaintiff's claims for: (1) hostile work environment, (2) retaliation, pursuant to the Texas Labor Code, (2) retaliation, pursuant to the Texas Whistleblower Act, and (3) declaratory judgment.

SIGNED and ORDERED this 6th day of April, 2011.

_____
Janis Graham Jack
United States District Judge